Sam Rosania, Sr., and Pearl Bellina Rosania v. Commissioner.
Rosania v. Commissioner
Docket No. 56511.
United States Tax Court
T.C. Memo 1956-116; 1956 Tax Ct. Memo LEXIS 179; 15 T.C.M. (CCH) 580; T.C.M. (RIA) 56116; May 14, 1956
*179 1. On December 31, 1949, 200 shares of petitioner Sam Rosania's stock in a corporation of which he was the majority stockholder were redeemed at par value, which was its cost to petitioner. The corporation, a short time prior thereto, had sold the branch of its business which required the largest amount of capital and the stockholders decided the corporation did not need so large an amount of capital which was then in the business and for this reason it was determined to redeem 200 shares of petitioner's stock. There was no pro rata redemption of stock. Held, the redemption was a partial liquidation within the meaning of section 115(i), Internal Revenue Code of 1939, as petitioners contend and was not essentially equivalent to the distribution of a taxable dividend under section 115(g) of the 1939 Code, as the Commissioner has determined. 2. The Commissioner in his determination of the deficiency determined that the use of a Cadillac automobile furnished petitioners by the corporation for their personal use was income to them to the extent of $500. The evidence discloses that the automobile was a new Cadillac used in part by the corporation in its business and was used in part *180 by petitioners for their personal use. The percentage of time the automobile was used in the company's business and the percentage of time it was used by petitioners for personal use is not shown. The corporation paid the cost of insurance, maintenance, and operation of the car. Held, considering the state of the evidence, the Commissioner is sustained in his determination that petitioners' income should be increased by $500 on account of the corporation's furnishing the car for petitioners' personal use. Arnold Lefkovits, Esq., Title Guarantee Building, Birmingham, Ala., for the petitioners. Frederick T. Carney, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income tax of $5,971.36 for the year 1949. The deficiency *181 is due to the addition to the income reported on petitioners' return of the following items: (a) Dividends increased
$20,000.00
(b) Other income
500.00
The adjustments shown above are explained in the deficiency notice as follows: "(a) It is determined that the Alabama Garment Company redeemed 200 shares of its stock during the year 1949 at such a time and in such a manner as to make the redemption essentially equivalent to the distribution of a taxable dividend within the meaning of section 115(g) of the Internal Revenue Code of 1939. * * * "(b) It is held that the use of a Cadillac automobile furnished you by the Alabama Garment Company is income to you to the extent of $500.00." The petitioners, by appropriate assignments of error, contest the correctness of the foregoing adjustments, except they do concede that they are taxable to the extent of $250 of the $500 determined by respondent for automobile use. Findings of Fact Part of the facts have been stipulated and are found as stipulated and incorporated herein by reference. Petitioners are husband and wife, residing in Birmingham, Alabama. They filed their joint income tax return for the calendar *182 year 1949 with the then collector of internal revenue for the district of Alabama. Issue 1 - Facts Connected with Redemption of 200 Shares of Stock Alabama Casket and Garment Corporation, sometimes hereinafter referred to as the Corporation, was organized under the laws of the State of Alabama, with its principal office in Birmingham, Alabama, on January 3, 1947. At the time the Corporation was organized it issued 500 shares of common stock of the par value of $100 per share. The original stockholders and the number of shares issued to each upon incorporation are as follows: (1) Sam Rosania, Sr. (Petitioner)
420 shares
Pearl Rosania (Petitioner, wife
of (1))
10 shares
Sam Rosania, Jr. (Son of (1))
30 shares
Bettie Rosania Lewis (Daughter
of (1))
30 shares
John C. Lewis, Jr. (Son-in-law of
(1))
10 shares
Total
500 shares
The beginning capital of the Corporation consisted of the business previously owned and operated by petitioner Sam Rosania, Sr., which going business and its assets he transferred to the Corporation on January 3, 1947, the date of incorporation, for all of its authorized capital stock. The shares received by the other named stockholders *183 upon incorporation were gifts from petitioner. Petitioner Sam Rosania, Sr., sometimes hereinafter referred to as the petitioner, has been at all times president and majority stockholder since the date of incorporation to the present time. The Corporation was initially engaged in the business of manufacturing burial garments and wooden cypress caskets. It also manufactured what is commonly known as "jobber metal" caskets. On October 25, 1949, the Corporation entered into an agreement to sell to Mason Watson all of the assets of the Corporation pertaining to its casket business. Under the October 25, 1949 agreement the Corporation agreed to sell all of the assets of the company, real, personal and mixed, including the real estate and improvements, machinery and equipment, office furniture, fixtures and equipment, inventory of finished merchandise and all supplies of every type and kind except: (1) accounts receivable from the garment department, (2) inventory of the garment department, (3) machinery and equipment of the garment department, and (4) three automobiles. On December 3, 1949, the Corporation executed and delivered bills of sale transferring its casket assets to Watson *184 Casket Company, a corporation, pursuant to the agreement of October 25, 1949. The Corporation transferred all of its real estate at this time to Watson Casket Company by warranty deed. On December 31, 1949, after the sale of the casket assets, petitioner transferred to the Alabama Casket and Garment Corporation 200 shares of his stock. After this transfer petitioner owned 220 shares of the capital stock of the Corporation, out of a total of 300 outstanding shares. The stock transferred to the Corporation was part of the original issue. At the time of the transfer the stock had a book value of $148.52 per share. Its fair market value was at least par value ( $100 per share), the price at which it was transferred from petitioner to the Corporation. Under date of December 31, 1949, the following journal entry was made in the books of the Corporation: Account
Debit
Credit
Treasury Stock
$20,000.00
Sam Rosania, Special Ac-
count
$14,910.92
Stock Subscription Receiv-
able
5,089.08
The following is a summary of withdrawals made by petitioner from the Corporation and repayments by him to the Corporation as reflected by the account upon the corporate books *185 entitled, "Sam Rosania, Special Account": Debit
Credit
Balance
1947
Capital
$50,000.00
Book value of assets transferred
$45,410.92
Advances
3,500.00
Repayments
3,000.00
$5,089.08
1948
Advances
10,750.00
Repayments
6,250.00
9,589.08
1949
Advances
16,269.19
Balance from Pearl Rosania
account
635.33
Repayments
6,500.00
Repayments by redemption of
200 shares of stock
20,000.00 *
(6.40)
1950
Advances
1,751.72
Repayments
5,727.88
(3,982.56)
1951
Advances
8,952.78
Repayments
3,500.00
1,470.22
At the time the Corporation sold its casket assets to Watson Casket Company it employed 70 to 75 persons, of which approximately 20 to 22 were employed in the burial garment department and around 48 or 50 in the casket department. After the sale of the casket division in 1949, the Corporation had 20 to 22 employees and has the same number at the present time. On January 16, 1950, after the sale of the casket division, the Corporation changed its name from Alabama Casket and *186 Garment Corporation to Alabama Garment Company. The Corporation made a net profit of $10,879.26 upon the sale of the casket division to Watson Casket Company, and this profit was reported in the Corporation's 1949 income tax return. This profit of $10,879.26 realized by the Corporation from the sale of the casket division was the difference in book value of the liabilities assumed by the purchaser ($161,737.23) and the assets transferred to the purchaser ($150,857.97). The Corporation did not receive any cash from the transfer of the casket division. In the sale of the casket division the Corporation transferred $150,857.97 (or 61.4 per cent) of its total assets of $245,848.16 book value, retaining $94,990.19 (or 38.6 per cent) assets. After the sale of the casket division the Corporation moved its operations to another location in Birmingham, Alabama, where it continued the burial garment business in much smaller quarters than the Corporation used when it operated both the casket division and the burial garment division. After the sale of the casket division, the stockholders of the Corporation decided that there was less need for capital in the business than there had been *187 prior to that time and it was decided that the Corporation would redeem 200 shares of the stock owned by petitioner Sam Rosania, Sr. This redemption was to be by purchase from him of 200 shares at par value and the purchase price to be paid him was by crediting to his account the $20,000 as heretofore shown in these Findings of Fact. None of the stockholders of the Corporation other than petitioner Sam Rosania, Sr., transferred any of their shares to the Corporation. The 200 shares which he transferred to the Corporation were not canceled but were thereafter held as treasury stock. The Corporation has never attempted to dispose of the 200 shares of treasury stock for additional funds. According to the books of the Corporation, its profits and losses from the date of its organization through 1951, without regard to minor adjustments in Federal income taxes, are as follows: Profit
Federal In-
Alabama In-
Net Addition
Year
Before Taxes
come Taxes
come Taxes
Surplus
Surplus
1947
$11,304.97
$2,494.32
$275.14
$ 8,535.51
$ 8,535.51
1948
16,389.25
3,581.15
384.24
12,423.86
20,959.37
1949
4,436.33
963.47
113.41
3,359.45
24,318.82
1950
(2,396.18)
(355.80)
(2,040.38)
22,278.44
1951
1,836.83
609.43
47.58
1,179.82
23,458.26
*188 No dividend has been declared or paid by the Corporation since the date of incorporation to the end of the taxable year involved, December 31, 1949. Avoidance of tax was not one of the reasons for the redemption of the 200 shares of stock. The crediting to the account of Sam Rosania, Sr., of $20,000 on December 31, 1949, in redemption of 200 shares of his stock was a distribution in partial liquidation of the Corporation and was not a redemption at such time or in such a manner as to make the distribution and redemption essentially equivalent to the distribution of a taxable dividend. Issue 2 - Amount of Income Due to Petitioners' Use of Corporation's Automobile During the year 1949, the Alabama Garment and Casket Corporation furnished Sam Rosania, Sr., a new 1949 Cadillac automobile for his use. The Corporation paid for the insurance, maintenance and operation of the automobile. This car was used partly for company business and partly for the petitioners' personal use and was driven by the petitioner to and from his home to his place of business and return each day and was also used to some extent by petitioners in other ways as their personal automobile, such as going *189 to and from church on Sundays. The petitioners did not own an automobile during the year 1949. Petitioner estimated that his personal use of the 1949 Cadillac amounted to about 125 to 150 miles per week (6,500 to 7,800 miles per year). The use of the Cadillac automobile furnished the petitioners by the Corporation constituted taxable income to them to the extent of $500 as the Commissioner has determined in his deficiency notice. Opinion Issue 1 BLACK, Judge: The first question we have to decide is, did the petitioner, Sam Rosania, Sr., receive a taxable dividend of $20,000 in 1949 under section 115(g) of the 1939 Code when he transferred to a Corporation of which he was the principal stockholder 200 shares of his stock therein in cancellation of: (a) a stock subscription receivable account representing an indebtedness due from him to the Corporation in the amount of $5,089.08, and (b) his indebtedness to the Corporation in the amount of $14,910.92. The respondent has determined that the redemption of petitioner's 200 shares of stock for $20,000 credited to his account in the manner detailed in our Findings of Fact was essentially equivalent to the distribution of a taxable *190 dividend within the meaning of section 115(g). That provision is printed in the margin. [1]
Petitioner contends that the redemption of 200 shares of his stock was primarily due to the fact that shortly prior to the redemption the Corporation had sold the branch of its business which required the use of the largest part of the Corporation's capital, viz., the casket division, and that after the sale the business no longer required the amount of capital which was then in the business and that consequently the stockholders decided on the redemption of 200 shares of petitioner's *191 420 shares. It is petitioner's contention that the redemption was a partial liquidation within the meaning of section 115(i) of the 1939 Code printed in the margin. [2]
Petitioner denies that the redemption was essentially equivalent to the distribution of a taxable dividend under section 115(g) as respondent has determined. Petitioner also contends that inasmuch as the shares were redeemed at par value, which represented petitioner's cost of the stock, there was neither gain nor loss to the petitioner in the redemption of the stock. Respondent does not contend that the redemption was at a greater price than cost to petitioner. What he does contend, as already stated by us, is that the distribution to petitioner was essentially equivalent to the distribution of a taxable dividend under section 115(g). *192 The determination of the Commissioner that the distribution was essentially equivalent to the payment of a dividend is presumed to be correct. See J. Natwick, 36 B.T.A. 866, in which we said: "Without deciding whether the question presented here is purely one of fact or a mixed question of fact and law, we are of the opinion that the respondent is correct in maintaining in this case that his determination under this, as under other provisions of the statute, carries a presumption of correctness which must be overthrown by a preponderance of the evidence on the part of the petitioner. * * *" We think the petitioner has met his burden of proof in the instant case; we think petitioner has furnished such a preponderance of the evidence. Regulations 111, section 29.115-9, reads in pertinent part as follows: "Sec. 29.115-9. Distribution in Redemption or Cancellation of Stock Taxable as a Dividend. - * * * "The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion *193 of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. * * *" An examination of the facts in the instant case will show that the above-quoted provisions of Regulations 111, section 29.115-9, are not precisely descriptive of what occurred here. For example, the distribution, which respondent has determined was essentially equivalent to the distribution of a taxable dividend, was not a pro rata distribution among all stockholders. It was only petitioner's stock which was redeemed in part and none of the stock of the other stockholders was redeemed. The fact that the redemption here was not pro rata would be, under the Treasury regulations just quoted, in petitioners' favor, but it would not be conclusive. A redemption does not have to be pro rata to come within *194 the provisions of section 115(g), McGuire v. Commissioner, 84 Fed. (2d) 431. On the other hand, even though the redemption of stock in the instant case had been pro rata among all stockholders, that fact would not necessarily have made the distribution essentially equivalent to the distribution of a taxable dividend. Where the distribution in redemption of stock is done for business purposes and motives dictated by the reasonable needs of the business, it is not a distribution equivalent to a taxable dividend under section 115(g), even though the distribution is pro rata. See John L. Sullivan, 17 T.C. 1420, affirmed 210 Fed. (2d) 607. In that case, we said: "There is no particular significance in the fact that the distribution was pro rata or that the corporation had never declared any regular dividends. There is ample evidence that the corporation did not intend this particular distribution as an ordinary dividend from accumulated earning. * * *" There have been many decisions dealing with the question we have here to decide. The parties have cited many of them in their briefs. Manifestly, it would not be feasible to take up and comment *195 upon all of them. One thing that most of these cases seem to agree upon is as stated in the Treasury regulations above quoted: "The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. * * *" The essential facts surrounding the transactions here involved have been given in our Findings of Fact and it is not necessary to restate them at any great length here. The essential facts may be summarized as follows: There was a substantial contraction of the Corporation's business as a result of the sale of its casket division toward the end of the year 1949. The Corporation sold $150,857.97 of its total assets of $245,848.16, retaining only $94,990.19 worth of assets. As proof of the decreased need for capital after the sale of the evidence shows that liabilities were reduced as follows: Prior to Sale
After Sale
Current liabilities
$130,121.30 to
$20,671.37
Mortgage
52,287.30 to
0
Total
$182,408.60 to
$20,671.37
The amount of inventory on hand was reduced from $51,688.44 on December 31, 1948 to $20,052.31 *196 on December 31, 1949. The amount of machinery and equipment was reduced from $26,856.66 on December 31, 1948 to $6,912.78 on December 31, 1949. The number of employees was reduced from 70 or 75 before the sale to 20 or 22 after the sale. The building space required for operations was reduced from 35,000 to 40,000 square feet before sale to 6,500 to 8,000 square feet after the sale. In view of these very substantial changes in the Corporation's business which resulted from the sale of its casket division and the reduced need for capital in the business by reason of this change, the evidence is to the effect that the stockholders, including petitioner who was the majority stockholder, decided to redeem 200 shares of petitioner's stock at par value. This stock was not redeemed by the payment of cash but was paid by the crediting of $20,000 to petitioner's account on the books of the Corporation. Such credit entirely wiped out petitioner's debits on the books of the Corporation and left him with a credit balance of $6.40. Furthermore, the evidence convinces us that the advances to petitioner in 1947, 1948, and 1949, represented bona fide loans to him and he made repayments from *197 time to time. Petitioner's running account with the Corporation is set out in our Findings of Fact. It shows that at the end of 1947 he owed the Corporation $5,089.08, at the end of 1948 he owed $9,589.08, at the end of 1949 he had a credit balance of $6.40, at the end of 1950 he had a credit balance of $3,982.56, and at the end of 1951 he owed the Corporation $1,470.22. In view of the evidence that it was quite usual for petitioner to receive advances from the Corporation as loans and to subsequently make repayment of these loans, we attach no particular importance to the fact that in the redemption of 200 shares of petitioner's stock the payment therefor was made by crediting petitioner's account with $20,000. Also it is proper to point out that the failure of the Corporation to cancel the stock after it was redeemed does not cause the transaction to fall within the ambit of section 115(g). The words "cancellation or redemption" of stock as used in section 115(g) have been held to be sufficiently broad to include the acquisition of stock which is not canceled or retired, but kept in the treasury of the corporation. See J. Natwick, supra.For reasons above stated, we *198 hold in favor of petitioner on Issue 1. Issue 2 Issue 2 requires but little discussion. The petitioners in their petition and at the hearing conceded that the income which they reported in their joint return should be increased by $250 on account of the personal use of the Corporation's Cadillac automobile. The car furnished the petitioners was a new Cadillac. Petitioner used it daily in driving to and from his work. This is, of course, a personal expense and ordinarily it would be incurred by a taxpayer, if he used the automobile method of travel, by the use of his own automobile. But in the instant case petitioner did not own an automobile. The Corporation owned it and furnished it to petitioner for his personal use. It is true that the automobile was used also in the Corporation's business. The Corporation paid for the expense of insurance, maintenance and operation. The record does not disclose the cost of these expenditures nor the original cost of the car. We have no evidence as to the percentage of time the automobile was used in the Corporation's business and the percentage of time it was used by petitioner for his personal use. Considering all the evidence in the record *199 with reference to petitioner's use of this Cadillac automobile in personal use, we conclude that the amount of $500 which the Commissioner has determined in his deficiency notice is a reasonable figure and we sustain it. On this issue, the Commissioner is sustained. Decision will be entered under Rule 50. Footnotes
*. Of this amount, $14,910.92 was credited to advances made to Sam Rosania and $5,089.08 was credited to stock subscriptions payable by him.↩
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(g) Redemption of Stock. - (1) In general. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(i) Definition of Partial Liquidation. - As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.↩